**HAMLIN, Estate of, In Re.**

Probate Court, Franklin County.

No. 130118. Decided April 28, 1949.

W. E. Knepper, Columbus, on behalf of Claimant Jess Robert Perkins.

Thomas W. Applegate, on behalf of Executrix.

Clifford L. Rose, Columbus, on behalf of the insurer of the deceased.

**OPINION**

By McCLELLAND, J.

This matter comes before the Court upon the Petition of Jess Robert Perkins for authority on behalf of this Court to present a claim against the Estate of M. R. Hamlin, deceased. The Petitioner recites that he is the owner and holder of a claim against the estate of the above named decedent, to-wit: a claim for damages for personal injuries and property damages arising out of a collision between an automobile of said decedent, operated by him, and an automobile owned and operated by the said applicant, which accident occurred on or about the 4th day of August 1948, and that the claim is in the amount of $2,000.00. The petition contains the following language:

"The petitioner says that he did not present said claim to the administrator of said estate within the time prescribed by law for the reason that he did not have actual notice of the appointment of the executor of said estate in sufficient time to present his claim within the period prescribed by law; petitioner further says that said executor was appointed on August 24, 1948 and that said petitioner first had actual notice of said appointment on February 26, 1949."

The petitioner seeks his relief by virtue of the terms of §10509-134 GC, which contains the following language:

"A claimant who has failed to present his claim to the executor or administrator within the time prescribed by law may file a petition in the probate court for authority to present his claim after the expiration of such time. Such petition forthwith shall be assigned for hearing, and at least five days before the date of the hearing, the claimant shall give written notice thereof to the executor or administrator and to such other parties, if any, as the court may designate. If upon hearing the court finds (a) that the claimant did not have actual notice of the decedent's death or of the appointment of the executor or administrator in sufficient time to present his claim within the period prescribed by law, or (b) that the claimant's failure to present his claim was due to the absence of the executor or administrator from his usual place of residence or business during a substantial part of such period or was due to any wrongful act or statement on the part of the executor or administrator or his attorney, or (c) that

the claimant was subject to any legal disability during such period or any part thereof, then the court may authorize such claimant to present his claim to the executor or administrator after the expiration of such period; provided, however, that a claim which is not presented within nine months from the appointment of the executor or administrator shall be fore-ever barred as to all parties, including devisees, legatees and distributees, and no payment shall be made nor any action maintained thereon, except as otherwise provided in this chapter with reference to contingent claims."

At the outset we must refer to the petition herein filed and especially to the fact that the claimant declares that he did not have actual notice of the appointment of an executor in sufficient time to present his claim within the period prescribed by law. It is significant that he did not avail himself of another provision of the statute which would permit him to file his claim if he did not have actual notice of the decedent's death.

The claimant relies upon his own understanding of the construction of this statute by the Court of Appeals of the 2nd District in the case of in re: **Estate of Erbaugh, reported in 73 Oh Ap page 533.** We are not in disagreement with that Court in that particular case on the limited facts therein set forth. Counsel for the claimant in this case apparently takes the position that he may choose any one of the circumstances mentioned in the statute, and if he proves that his case comes under that particular phase of the statute he may have his claim reinstated. With this particular concept we do not agree. It is the opinion of this Court that the claimant is subject to any and all punitive provisions of the statute which may be applicable to him. Under the construction claimed by the claimant he might know of the appointment of the administrator or executor, but come to the Court with a petition stating only that he did not have actual knowledge of the death of the decedent, and expect to have his claim reinstated, on the proof of his allegation. In such a case the Court would be compelled to find that the claimant knew that an administrator had been appointed but did not know that the decedent was dead, and then reinstate his claim.

The Court in the Erbaugh case reads into the statute the word "either", before clause (a), and paraphrases the sentence thus: "if the Court finds either that the claimant did not have actual notice of the decedent's death or finds—" By inserting the word "either" in this position, the Court may

allow the presentation of the claim. With this construction we do not agree. The Court may and should consider the entire statute and all its provisions, and may subject the claimant to any one or any other provisions of the statute which the evidence justifies. Conversely stated the intent of the statute is that if the Court finds that the claimant had actual notice neither of death of the decedent nor the appointment of the administrator, his claim should be reinstated.

The Court has before it the transcript of the testimony taken at the hearing, but before we can consider the testimony, we must first determine, if possible, what is meant by the term "actual notice". The Court has carefully examined the decisions of the various courts of Ohio, and has been unable so far to find a judicial definition of "Actual notice", as it is used and contemplated in the statute hereinbefore referred to.

This Court has made an extensive investigation and finds that the most philosophical discussion of this subject is found in Vol. 2 of Pomeroy's Equity Jurisprudence, 5th Edition, under the chapter entitled "Notice". Owing to the learned discussion of the subject and the eminent authorities upon which the article is based, the Court is impelled to quote at length therefrom. At Section 592, page 603, of the volume above referred to, there is a discussion of the distinction between "knowledge" and "notice", as follows:

"Before entering upon this examination, a few preliminary observations are necessary, to clear the ground and to explain the exact nature of the questions which are to be discussed, and of the conclusions to be reached by such discussion. In the first place, it is of the utmost importance to distinguish between the objects and purposes for which the fact of notice having been given may be invoked. One object of notice may be simply to affect the priority of a right which the one receiving it has acquired, and to subordinate such right to an interest in the same subject-matter held by another. On the other hand, notice MAY be regarded as an ingredient or badge of fraud, as a feature which renders the transaction entered into by the person who receives it fraudulent. A distinction clearly exists between these two purposes; and the rules which govern the nature and effect of notice in each must be different. That might easily be sufficient to subordinate a person's right to another interest which would at the same time fall far short of stamping his conduct with actual fraud. In the second place, it should be most carefully borne in mind

that the legal conception of "notice," as contained in the settled doctrines and rules of equity, is somewhat artificial and even technical. In this purely legal artificial sense, notice is by no means synonymous with knowledge, ALTHOUGH THE EFFECTS PRODUCED BY IT ARE UNDOUBTEDLY THE SAME WHICH WOULD RESULT FROM ACTUAL KNOWLEDGE. In other words, while the doctrines of equity on the subject do not assume that notice IS knowledge, nor even that it is necessarily followed by knowledge, they still often impute to it the very same consequences which would flow from actual knowledge acquired by the party. As the notice spoken of by the rules is not knowledge, there may be notice without knowledge, and knowledge without notice." * * *

Owing to the length of that section the Court will refrain from reproducing the entire article. We do, however, feel impelled to quote further from page 592, as follows:

"Whenever, on the other hand, a party is shown to have obtained an actual knowledge, even though there has been nothing which constitutes a notice in its true sense, then there is no longer any necessity of resorting to the artificial conception of notice; the consequences must naturally and necessarily flow from an actual knowledge of facts by a party, which from motives of expediency are attributed to a NOTICE of the same facts given to him, in the absence of actual knowledge."

At the bottom of page 606 Section 592, the author quotes from Lord Cairns, as follows:

"All I can do is to apply those principles which have been well established as part of those principles on which the court proceeds. . . . I am bound to say that I do not think it would be consistent with the principles upon which this court has always proceeded, or with the authorities which have been referred to if I were to hold that under no circumstances could a trustee, without express notice from the encumbrancer, be fixed with knowledge of an encumbrance upon the fund of which he is the trustee. It must depend upon the facts of the case. But I am quite prepared to say that I think the court would expect to find that those who alleged that the trustee had knowledge of the encumbrance had made it out, not by any evidence of casual conversations, much less by any PROOF OF WHAT WOULD ONLY BE CONSTRUCTIVE NOTICE, but by proof that the mind of the trustee has in some way been brought to an intelligent apprehension of

the nature of the encumbrance which has come upon the property, so that a reasonable man, or an ordinary man of business, would act upon the information and would regulate his conduct by it in the execution of the trust. If it can be shown that IN ANY WAY the trustee has got KNOWLEDGE of that kind,—knowledge which would operate upon the mind of any rational man, or man of business, and make him act with reference to the knowledge he has so acquired,—there I think the end is attained, and that there has been.fixed upon the conscience of the trustee, and through that upon the trust fund, a security against its being parted with in any way that would be inconsistent with the encumbrance which has been created." * * *

The author then in discussing the statement of Lord Cairns, says:

"This extract states what is, in my opinion, the general doctrine, applied here to a trustee, but applicable to all persons whose rights or liabilities can be affected by notice of rights belonging to others. It declares that although there may be no technical 'notice,' not even a CONSTRUCTIVE notice, still there may be an ACTUAL KNOWLEDGE, acquired in modes which do not amount to notice; and this KNOWLEDGE may produce the same effects which the rules of equity attribute to 'notice.' "

The author then at Section 593 makes a distinction between "actual" and "constructive" notice, and then at Section 594, the author uses the following language:

"In defining the term "notice" Judges and text-writers have seldom attempted to define themselves with specifying instances, or describing its kinds and effects. Within the meaning of the rules, notice may, I think, be correctly defined as the INFORMATION CONCERNING A FACT actually communicated to a party by an authorized person, or actually derived by him from a proper source, or else presumed by law to have been acquired by him, which information is regarded as equivalent in ITS LEGAL EFFECTS to full knowledge of the fact, and to which the law attributes the same consequences as would be imputed to knowledge. It should be most carefully observed that the notice thus defined is not knowledge, nor does it assume that knowledge necessarily results. On the other hand, the information which constitutes

the notice may be so full and minute as to produce complete knowledge. Although an actual knowledge is not necessarily assumed to result, yet in many instances, as will be seen (No. 606, et seq.), the party is not permitted to show this fact, but the same consequences follow with respect to his rights and interests as though he had obtained real knowledge. The correctness of the definition which I have formulated will appear from a comparison of all the cases hereafter cited in the discussions of this section."

Then at Section 595, the author, in the light of the foregoing, promulgates a definition of "actual notice" in the following language:

"Actual notice is information concerning the fact,—as, for example, concerning the prior interest, claim or right,—directly and personally communicated to the party. The distinction between actual and constructive notice does not primarily depend upon the AMOUNT of the information, but on the manner in which it is obtained, or assumed to have been obtained. In actual notice information is not INFERRED by any presumption of law; the personal communications of it is a fact, and, like any other fact, is to be proved by evidence. The information MAY be so full, minute, and circumstantial, that the party receiving it thereby acquires a complete knowledge of the prior facts affecting the transaction in which he is then engaged, or it may fall far short of conveying such knowledge. Again, the evidence may be so direct, positive, and overwhelming as to establish the fact that the information was personally given and received in the most convincing and unequivocal manner, or it may be entirely indirect and circumstantial. **Wherever, from competent evidence, either direct or circumstantial, the court or the jury is entitled to infer, AS A CONCLUSION OF FACT, AND NOT BY MEANS OF ANY LEGAL PRESUMPTIONS, that the information was personally communicated to or received by the party, the notice is actual. In short, actual notice is a conclusion of fact, capable of being established by all grades of legitimate evidence.**"

The author at Section 596, discusses only indirect evidence as to "actual notice" and how it may be applicable, and also discusses the distinction between construction and actual notice, as follows:

"It is admitted by all text-writers and by many judges that much confusion and inaccuracy of language are exhibited

in the decisions concerning actual and constructive notice: notices are not infrequently called "constructive," which are really "actual," and the rules governing the two are confounded. That the party has knowledge or information of facts sufficient to put him upon an inquiry has often been treated as peculiarly the characteristic of constructive notice. In truth, however, this test is equally applicable to every instance of actual notice inferred by process of rational deduction from circumstantial evidence. The distinction is plain and natural. In all cases of constructive notice, there is no evidence which directly tends to show that any information of the prior conflicting claim was personally brought home to the consciousness of the party effected; the particular facts of which he is shown to have knowledge do not directly tend to show such information; but from these facts the legal presumption arises, either conclusive or rebuttable, that the information was received. In all cases of actual notice inferred from circumstantial evidence, the facts proved do directly tend to show that information of the prior conflicting claim was personally brought home to the consciousness of the party. The court or jury infers from the facts proved, by a process of rational deduction, BUT WITHOUT THE AID OF ANY LEGAL PRESUMPTION, that such information was actually received. '* * *"

The court then at Section 597, discusses the degree of information which would put a person on inquiry in order to charge him with actual notice. In the second paragraph of that section, the author uses the following language:

"On the other hand, the proposition is established by an absolute unanimity of authority, and is equally true both in its application to constructive notice, and to actual notice not proved by direct evidence but inferred from circumstances, that if the party obtains knowledge or information of facts tending to show the existence of a prior right in conflict with the interest which he is seeking to obtain, and which are sufficient to put a reasonably prudent man upon inquiry, then it may be a legitimate, and perhaps even necessary, inference that he acquired the further information which constitutes actual notice. This inference is not, in case of actual notice, a presumption, much less a conclusive presumption, of law; it may be defeated by proper evidence. If the party shows that he made the inquiry, and prosecuted it with reasonable diligence, but still failed to discover the

conflicting claim, he thereby overcomes and destroys the inference (see No. 601). If, however, it appears that the party obtains knowledge or information of such facts, which are sufficient to put a prudent man upon inquiry, and which are of such a nature that the inquiry, IF PROSECUTED WITH REASONABLE DILIGENCE, WOULD CERTAINLY LEAD TO A DISCOVERY OF THE CONFLICTING CLAIM, then the inference that he acquired the information constituting actual notice is necessary and absolute; for this is only another mode of stating that the party was put upon inquiry; that he made the inquiry and arrived at the truth. Finally, if it appears that the party has knowledge or information of facts sufficient to put a prudent man upon inquiry, and that he wholly neglects to make any inquiry, or having begun it fails to prosecute it in a reasonable manner, then, also, the inference of actual notice is necessary and absolute." * * *

At Section 603, the author discusses the effect of the knowledge on the part of a person who denies the existence of "actual notice", as follows:

"What, then, is the effect of actual knowledge of the prior fact, interest, claim, or right, acquired previously, or in an entirely different transaction, or from a stranger or person having no interest in the property, or even in an accidental and fortuitous manner? The answer, or principle, is very clear and certain. It was shown in a former paragraph (592) that the conception of notice was introduced, and the rules concerning it were established, from considerations of policy and expediency based upon the common experience of mankind. Notice, even when actual, is not necessarily equivalent to knowledge, but the same effects must be attributed to it which would naturally flow from knowledge. It is treated as a representative of, or substitute for, actual knowledge, and is therefore in its essential nature inferior to knowledge. It necessarily follows that whenever a party has obtained a full knowledge, although not in accordance with the rules which define the nature of notice, and regulate the mode of its being given and received, there is no longer any need of invoking the legal conception of notice; the rules concerning it no longer apply; the very fact for which it is intended as a substitute has been more perfectly accomplished in another manner. To sum up in one statement, if the party has in any way obtained the full knowledge, those same results must

necessarily and even in a higher degree, be attributed to it—the very substance itself—which are, from motives of general policy, attributed to notice as its representative and substitute. The conclusion thus reached, upon principle, is supported by the weight of judicial authority, and it will reconcile much, if not all, of the apparent confusion and conflict of opinion upon this subject to be found in some of the decisions. Of course the knowledge here spoken of must be something more than the mental condition produced by rumors, casual conversations, and the like,—more than any constructive notice, —more even than the MERE actual notice defined and permitted by the rules. It must appear that the mind of the party charged with the knowledge has been brought thereby to an intelligent apprehension of the nature of the prior fact, interest, claim, or right, so that a reasonable man, or an ordinary man of business, would act upon the information, and would regulate his conduct by it in the transaction or dealing in which he is engaged.

**In accordance with principle, and as a conclusion from the decided case, the following proposition may be formulated: If it can be shown that the party has in any way, from any person or source, by any means or method, for any purpose, although not in pursuance of the rules which regulate the giving of notice, obtained or derived actual and full KNOWLEDGE of the kind above described, concerning the prior fact, interest, claim, or right,—that is, a knowledge which would operate upon the mind of any rational man, or man of business, and make him act with reference to the knowledge he has so acquired in the transaction or dealing in which he is engaged—then the same results must follow from the knowledge so obtained which would follow from an actual notice communicated in the manner required by the rules governing notice; in other words, the conscience of the party having the knowledge is affected by it in the same manner and to the same extent as it would be affected by an actual notice.** It sometimes happens that by a positive rule of the law an actual and technical notice is necessary, in order to put a person in default, or to perfect some legal right, and then knowledge, however complete, will not supersede or take the place of the notice (see No. 660). Actual knowledge, however, will generally have the same effect as notice in controversies concerning priority; but it is especially important in determining the existence of good faith; it is often a most essential element in making out a fradulent intent, where a mere technical notice would not be sufficient."

We have also examined the statement of the Editor on the subject of "Actual Notice", contained in 39 American Jurisprudence at page 234. At Section 4, the author discusses "actual notice" in the following language:

"The words "actual notice" do not always mean in law what in metaphysical strictness they import; they more often mean, knowledge of facts and circumstnces sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts. The statutes of some states provide that actual notice consists in express information of a fact. And some courts have said that notice is actual when it is directly and personally given to the person to be notified. It is the general rule, however, that actual notice embraces all degrees and grades of evidence, from the most direct and positive proof to the slightest circumstance from which a jury would be warranted in inferring notice. It is a mere question of fact and is open to every species of legitimate evidence which may tend to strengthen or impair the conclusion."

Also at Section 5, the author discusses the circumstances which amount to or tantamount to "actual notice", as follows:

"As heretofore stated, actual notice embraces all degrees and grades of evidence. Generally, a person can be said to have notice of a fact only when it is actually communicated to him in such a way that his mind can and does take cognizance of it. Of course when a person knows of a thing he has "notice" thereof, as no one needs notice of what he already knows. In other words, actual knowledge supersedes a requirement of notice.

While extrajudicial proceedings, or proceedings without jurisdiction, do not operate as constructive notice, yet express notice obtained from such proceedings operates the same as notice obtained in any other manner".

Referring to the subject of "actual notice" as discussed by the Author of the article appearing in Ruling Case Law, Vol 20, page 344, we find the following language:

"Generally a person can be said to have notice of fact only when it is actually communicated to him in such a way that his mind could and did take cognizance of it. And of course when a person knows of a thing he has "notice" thereof, as no one needs notice of what he already knows." * * *

Counsel for the estate has called our attention to decisions of various courts of Ohio construing the statute before its recent amendment. Under the former statute a claimant could have his claim reinstated when it was proven that he was not charged with culpable neglect in failing to present his claim within the four months period. One of the cases to which reference has been made is that of re: **George W. Weimer et al,** deceased, reported in **8 O. O. page 314.** Also the case of re: **Est. Felicia Capoziella, 6 O. O. page 469.** These cases do not bear directly upon the question at issue but the Court has been very much interested in the philosophy adopted by the courts in determining what constitutes culpable neglect, and we are frank to say that the philosophy adopted in those cases sustains the position of the Court in the present case in determining what constitutes and what does not constitute "actual notice".

At Section 6, the author discusses the matter of express or implied notice under the sub-division of "actual notice" and in part uses the following language:

"Actual notice has sometimes been said to be of two kinds, viz: (1) express, which includes what might be called direct information, and (2) implied, which is said to include notice inferred from the fact that the person had means of knowledge, which he did not use. Notice of the latter kind has frequently been classified by the courts as constructive notice, and some statutes so classify it. Other courts classify such notice as implied actual notice. This has also sometimes been termed actual notice in the second degree. The importance of the classification of notice of this character arises from the fact that constructive notice is a legal inference, while implied actual notice is an inference of fact. The same facts may sometimes be such as to prove both constructive and actual notice; that is, a court might infer constructive notice, and a jury infer actual notice, from the facts. There may be cases where the facts show actual, when they do not warrant the inference of constructive, notice. Express and implied notice differ merely in the mode of proof."

There are a number of provisions of the probate law of Ohio which provide for notice, some constructive, which are properly known as "notice by publication." Other statutes provide for "actual notice" by service of the notice, either upon the person personally, or at his usual place of resi-

dence. The statute now under investigation, however, does not stipulate in what manner the claimant should have "actual notice" or what is considered "actual notice." Neither have the courts of Ohio heretofore defined said term. And that is the reason this Court has felt it important to quote from the recognized authorities to the extent as hereinbefore indicated.

From the reading of the foregoing quotations it is quite obvious that the Court should deduce a definition of the term "actual notice" as used in §10509-134 GC by the author. Applying the principles hereinbefore referred to, this Court is impelled to find that if the claimant has in some way been brought to an intelligent apprehension of the death of the decedent or of the appointment of the executor or administrator, so that a reasonable man or ordinary man of business would act upon the information and would regulate his conduct thereby, he has actual notice of same. A definition less comprehensive would defeat the very purpose of the statute.

It is a generally accepted fact that §10509-112 GC, and following sections, together with §10509-134 GC were enacted to expedite the administration of estates. If the statute should be so construed that the claimant should have actual, personal and direct information or notice served upon him personally, it is obvious that almost any claimant could present his claim after the four month period. The law of Ohio, and especially the probate code, is entirely silent as to the giving of any notice in any event as to the death of a decedent. The only notice which the law requires as to the appointment of an administrator is a publication of the appointment. That is "constructive notice" and as far as it goes it is notice to all persons interested in the estate, whether they be creditors or have some other relation thereto. If the statute should have the narrow application as hereinbefore suggested, it is doubtful if any creditor could be denied the remedies provided by 10509-134 GC, and the statute providing for the presentation of claims within four months would be rendered practically inoperative and useless. That was not the intention of the legislature when the statutes were enacted. The statutes were enacted as hereinbefore stated, in order to expedite the administration of estates, and it is our opinion that the above conclusion is in harmony with the intention of the legislature.

At the hearing of this matter, counsel for the insurer of the deceased presented himself for the purpose of cross-examining the witness. The Court took the position that he

was not a party, nor did he represent a party to this action. But counsel said that no opposition would be interposed and the Court therefore permitted him to examine the witness. This examination pertained to conferences between the claimant and representatives of the insurer. The Court is of the opinion that that testimony is admissible testimony upon the question as to whether or not the claimant had "actual notice".

We now come to the facts as adduced by the evidence and the Court will attempt to apply the law as we have announced it to the facts adduced.

The testimony discloses that the accident out of which the alleged claim grows occurred on August 4, 1948, and that Mr. Hamlin's death occurred as a result of another accident subsequent thereto. At page 4 of the transcript the claimant was asked when he first learned that an executrix had been appointed on the estate of Mr. M. R. Hamlin. He said he did not know about it until about February 25, 1949. Upon examination by Mr. Rose, the following question was asked of the claimant:

Q. Now, isn't this true, that the upshot of our contracts was that I told you that the insurance company was willing to pay you a nuisance value of $400, which you would—which you were ready to accept if the administratrix would give her consent to that settlement, isn't that true?

A. No, you didn't mention anything like that.

The witness was then asked if Mr. Rose was to contact the administratrix and see if she would give her consent to a certain settlement. This the claimant denied. The witness was also asked if he did not remember that he was told that the events following the conversation described in the previous question that the administratrix would not give her consent by reason of the fact that she was considering bringing a claim against the claimant. The claimant denied any such a conversation.

Other questions were asked the witness which failed to elicit that he had knowledge of the appointment of an administratrix.

At page 8 of the transcript, we find that the following questions were asked of the claimant:

Q. Well, when did you become aware of the death of Mr. Hamlin?

A My wife was—my wife saw it in the newspaper—my wife saw it and told me.

Q. And what newspaper do you read?

A. The Dispatch.

Q. You read the morning papers too?

A. No.

Q. Well—

THE COURT: How soon after the death did that notice appear in the papers, the one to which you refer?

THE WITNESS: Gosh, I don't know. I imagine it was—it was the evening paper that I read it in.

THE COURT: But I say, how soon after the death was that publication—how soon after the death did that appear in that publication, do you know?

THE WITNESS: No, maybe Mr. Rose does.

Q. Mr. Perkins, I will ask you if that wasn't current news which appeared the same day or the day after the death?

A. It was, yes—it was on the front page, it was.

Q. And it was right close following the death, was it not?

A. Yes, naturally. I don't know if it was the same day or the day after.

We do not deem it necessary to quote at length from the transcript of the testimony. It is quite obvious that the claimant did have knowledge of the death of Mr. Hamlin as he admitted that he saw an account of his death on the front page of the newspaper. He had been negotiating with the agent of an insurance company with reference to his claim against Mr. Hamlin, and this information in regard to the death of Mr. Hamlin must have had a special significance to him on account of his previous accident and the negotiations with reference to same.

It is the opinion of this Court that under the circumstances he did have such knowledge of the death of Mr. Hamlin as would constitute "actual notice", not only of his death, but of the appointment of the administrator.

The prayer of the petitioner for the reinstatement of his claim is therefore denied, and an order may be drawn accordingly.