CANNELL, APPELLEE, *v.* BULICEK, EXRX., APPELLANT.

(No. 44792—Decided January 6, 1983.)

*Mr. J. Ross Haffey, Jr.,* for appellee.
*Mr. Julien C. Renswick,* for appellant.

PATTON, P.J. This is an appeal from the Court of Common Pleas of Cuyahoga County in which the appellant, Jean Bulicek, Executrix of the Estate of Kenneth C. Beck, contests the judgment of the trial court, which granted appellee, John D. Cannell, attorney's fees for services rendered the decedent. Bulicek had refused to accept appellee's claim for payment, contending that the presentation of such claim had fallen outside the statutorily conferred period for presentment (R.C. 2117.06), and that the amount of such fee was excessive. The facts giving rise to this appeal are essentially as follows.

The decedent, Kenneth C. Beck, had sought the legal services of appellee for purposes of tending to his estate, and to develop a living memorial to the arts in the decedent's name. The initial contact by Beck with appellee was in 1958. Though appellee was requested to tend to Beck's estate affairs during his lifetime, Beck requested that all fees due and owing appellee be deferred until the time of his death, with payment to be made from the Beck Estate.

Appellee rendered legal services to Kenneth C. Beck for a period of approximately twenty years. During this time, numerous drafts of wills and codicils were made and executed, and appellee assumed the instrumental role in establishing the charitable memorial sought by the decedent to perpetuate his name. During the early 1970's, appellee, after extensive discussion with numerous charitable organizations, entered into negotiations with the Lakewood Little Theatre. As a result of these negotiations and discussions, Lakewood Little Theatre became the beneficiary of Kenneth C. Beck's Estate and was renamed the Kenneth C. Beck Center for the Cultural Arts.

During the course of these negotiations, Beck became acquainted with

Howard Egert, an attorney who served on behalf of, and represented the interests of the Lakewood Little Theatre. The testimony adduced at trial established that Egert, while representing the Lakewood Little Theatre, also assumed representation of Beck for purposes of executing a new will. The provisions of this will removed appellee as the estate's attorney and placed Egert in that position. Though this information was not conveyed to appellee, the record reveals that Egert sought to discover the amount of attorney's fees due appellee for services rendered to Beck, so that the Beck Center had knowledge of the full amount of money it was entitled to upon Beck's death. The decedent, pursuant to this demand, sometime in the latter half of 1976 therefore requested that appellee provide him with a statement of the amount due for legal services rendered.

In December 1976, appellee rendered a bill for $50,000, to be paid from the Estate of Kenneth C. Beck. Written correspondence contained in the record revealed that Beck did not contest the amount, that Egert was fully aware of the amount owed appellee, and that Egert had attempted to have appellee donate a portion of such fees to the Kenneth C. Beck Center.

In September 1977, Kenneth C. Beck expired. On September 21, 1977, Jean Bulicek, a long-time friend of the decedent, was named as Executrix of the Beck Estate. It was not until after the death of Beck that appellee became aware of the new will drafted by Egert, which dismissed him as the estate's attorney and placed Egert in that position. On September 28, 1977, appellee therefore notified Egert by written correspondence that attorney J. Ross Haffey, Jr., had been retained to protect appellee's financial interests in the amount owed by the Beck Estate.

On December 16, 1977, a written claim against the Beck Estate was sent through the course of ordinary mail to Jean Bulicek as Executrix of the Beck Estate. Testimony was provided by Margaret Russo, secretary to Haffey, concerning the posting and mailing of the claim in question, in which Russo stated that the claim was processed as all other office mail and mailed the day prepared.

John Ratica, Manager of Quality Control of the Cleveland Post Office, testified that the stamped postmarked letters mailed from the Cleveland area to destinations within the Cleveland area had a rate of seventy-eight percent for next-day delivery, a rate of ninety-eight percent delivery by the second day after mailing, and a one hundred percent delivery rate by the third day after mailing.

Ratica also indicated that if a letter was misdelivered to the wrong zip code area, the post office procedure was that an endorsement would be put on the envelope and it would be returned to the proper area. However, if a person within the same zip code area received the letter as a result of misdelivery, the letter could be redeposited in a regular mailbox and it would be processed as an original mailing, without any additional markings or cancellations on the envelope.

In support of Bulicek's position that appellee's claim for attorney's fees fell outside the three-month statutory requirement for presentment, she testified that such claim arrived on January 11, 1978. She further testified that upon receipt of this correspondence, she immediately signed and dated the envelope. Stanley Kowalski, the mailman who delivered the correspondence to Bulicek, testified otherwise, however, and stated that no markings were on the letter when presented to him by Egert approximately one week later, concerning his recognition of this letter.

Bulicek also stated that Egert had given her no instructions with regard to appellee's claim. Egert's testimony, however, contradicted this. He stated that he had informed Bulicek to call him

immediately upon receipt of a written correspondence from appellee or his attorney, which she did. Egert also stated that when he saw the envelope on January 11, 1978, Bulicek's receipt notations and signature were already on the envelope. Further inconsistencies were present in the testimony of Egert and Bulicek with regard to their knowledge of appellee's claimed fees and presentment thereof.

Evidence was then provided concerning Bulicek's claim that the amount of $50,000 was excessive for the actual work performed. After testimony on this issue by appellee, expert witnesses Michael T. Gavin and Robert O. Fricke provided their opinions concerning the fees charged in conjunction with the nature of the tasks sought by Beck. While Gavin testified that the amount of $50,000 was reasonable in light of services rendered, Fricke stated that the hourly fee charged by appellee was higher than that normally charged.

On December 4, 1981, judgment was rendered in favor of appellee, the trial court determining in pertinent part that:

"The Court finds that this claim was presented, under R.C. 2117.06, when it was mailed within the three month time period and there is evidence that it would be received by the executrix within that same three month period. Under these facts the executrix received notice of the claim when it was mailed. *Actual receipt* of the claim by the executrix within the three month time period is not necessary to comply with R.C. 2117.06. *In re Estate of McCracken* (1967), 9 Ohio Misc. 195. *In re Estate of Clark* [(1967), 11 Ohio Misc. 103 (40 O.O.2d 347)]." (Emphasis *sic*.)

It is upon the foregoing facts and circumstances that Bulicek has sought this court's review, raising four assigned errors for consideration.

"I. The trial court erred in finding that plaintiff had presented his claim within three months of the appointment of the executrix."

It is initially contended by appellant that appellee's claim for attorney's fees was received on January 11, 1978, therefore falling outside the requirements of R.C. 2117.06. The provisions of that statute provide in pertinent part that:

"All creditors having claims against an estate shall present their claims to the executor or administrator in writing, including claims arising out of contract, out of tort, on cognovit notes, or on judgments, whether due or not due, secured or unsecured, liquidated or unliquidated. All claims shall be presented within three months after the date of the appointment of the executor or administrator * * *."

Ohio courts have held the presentment requirement of R.C. 2117.06 to be mandatory, *In re Estate of Natherson* (1956), 102 Ohio App. 475 [3 O.O.2d 35]; *Krash* v. *Jarvis* (App. 1962), 90 Ohio Law Abs. 99 [25 O.O.2d 133]; *In re Estate of Andres* (1961), 114 Ohio App. 167 [19 O.O.2d 21]; *Beacon Mut. Indemn. Co.* v. *Stalder* (1954), 95 Ohio App. 441 [54 O.O. 69]; *In re Estate of Hamlin* (P.C. 1949), 54 Ohio Law Abs. 257 [40 O.O. 1]; *Fortelka* v. *Meifert* (1964), 176 Ohio St. 476 [27 O.O.2d 439], as the purpose and objective of this law "* * * is manifestly to secure an expeditious and efficient administration of an estate by promptly providing such a fiduciary with [the] necessary information relating to the existence, amount and character of all indebtedness of the estate. * * *" *Fortelka* v. *Meifert, supra,* at 479, citing *Gerhold* v. *Papathanasion* (1936), 130 Ohio St. 342. The question which, therefore, necessarily arises from appellant's claimed error is whether appellee's attempted presentment, as evidenced by the December 16, 1977 mailing date, prior to the expiration of the statutory three-month period, constituted a valid presentment as required under the terms of R.C. 2117.06.

A review of the record reflects that the trial court had before it evidence that the letter containing appellee's claim for attorney's fees was postmarked Decem-

ber 16, 1977 and mailed that evening in accordance with normal office procedures.

Testimony was also provided by John Ratica, an expert witness from the Cleveland Post Office, concerning the delivery rates of letters mailed from the Cleveland area to destinations within the Cleveland area. Ratica indicated that delivery of such letters had a one hundred percent delivery rate within three days of mailing. Ratica also indicated that a delivered letter could be redeposited within the same zip code area and redelivered without any additional posting marks appearing on the correspondence to indicate it had been so redeposited.

Against this direct evidence, the trial court heard testimony from both the estate's executrix and attorney. The record reflects that Egert was aware of the outstanding claim against the estate and advised Bulicek to notify him upon receipt of a correspondence from appellee. Substantial conflict existed with regard to their testimony concerning the January 11, 1978 receipt of such claim.

This court and the Supreme Court have held on numerous occasions that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts. See *State* v. *DeHass* (1967), 10 Ohio St. 2d 230 [39 O.O.2d 366]; *State* v. *Bak* (Nov. 18, 1982), Cuyahoga App. No. 44568, unreported. This standard of appellate review is premised upon the fact that the trial court has the opportunity to hear the case in its entirety, as well as to view the witnesses' demeanor, appearance and conduct while testifying, and is therefore better able to determine the weight to be given the oral testimony and documentary evidence in conflict.

In light of the particular facts of this case, and the degree of conflicting evidence presented to the trier of facts, this court may not hold as a matter of law that the trial court erred in finding that

the executrix received a timely presentment of appellee's claim.

In reaching this determination, we limit this ruling to the particular circumstances and facts of this case. The simple wording of R.C. 2117.06 unambiguously states that "creditors * * * shall present their claims * * * within three months," and this court will not attempt to twist such provision into anything other than its plain meaning. Where, however, sufficient evidence is presented to the trial court that a claim was mailed to the executor of an estate, well within the statutorily required time period, and was correctly addressed and posted, and sufficient evidence is presented that the delivery rate for such a letter is one hundred percent within three days of mailing, it is within the trial court's discretion to weigh the evidence provided to determine whether presentment pursuant to R.C. 2117.06 was effectuated. *C. E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261].

In light of the foregoing, we must accordingly hold that appellant's initial assigned error is without merit and must be overruled by this reviewing court.

"II. The trial court's finding that there was an agreement between plaintiff and decedent that plaintiff was to receive $50,000 in legal fees for work performed by plaintiff was against the manifest weight of the evidence.

"III. Even if there was an agreement for fees between plaintiff and decedent, the court erred in recognizing such contract as the basis of recovery since such contract entered into during the course of the attorney-client relationship was presumptively invalid and plaintiff failed to overcome such presumptive invalidity by a showing that it was fair.

"IV. The trial court erred in finding that there was an ongoing client-attorney relationship from 1958 to December, 1976 when there was proof of such continuing attorney-client relationship only after

March, 1970; therefore, all claimed legal services of plaintiff performed prior to March, 1970 are barred by the statute of limitations.''

In appellant's remaining assigned errors, questions are raised with regard to the terms of the attorney-client relationship in existence between appellee and the decedent, Kenneth C. Beck. As these assigned errors essentially contest the determination of the trial court's findings, for purposes of expediency, the remaining errors shall be addressed together.

Initially, it is claimed by appellant that the trial court erred in finding the existence of an ongoing attorney-client relationship between appellee and Beck, dating from 1958 until December 1976. It is appellant's position that all services performed by appellee on the decedent's behalf constituted severable acts of employment, thereby barring any claim for compensation prior to 1970, as falling outside the statute of limitations for oral contracts, R.C. 2305.07.[1]

As has been established in the case of *Rhynard* v. *Goubeaux* (1962), 117 Ohio App. 435 [24 O.O.2d 242], ''* * * where the services of an attorney for a client are severable and distinct and there is no identifying continuity thereto, the statute of limitations for recovery therefor begins to run on each service at the time it is rendered. * * *'' *Id.,* paragraph one of the syllabus. ''[W]here [however] an attorney's employment is regarded as being single and continuous, his claim for services is not subject to the running of the statute of limitations until the termination of the employment, the contract being regarded as an entire one * * *.'' *Id.* at 438.

In applying the above-stated rule to the facts and circumstances of the case

*sub judice,* this court must necessarily find, as did the trial court, that the services rendered by the appellee constituted a continuous contract of employment. Appellee was retained by the decedent in 1958 for purposes of planning his estate, and developing a living memorial to perpetuate the decedent's name. Review of the record indicates that appellee so served Mr. Beck for a period of approximately twenty years, during which time appellee remained on constant call for the decedent's questions, amendment of his estate plans and bequests, and the development of the planned charitable memorial in Beck's name.

As evidenced in the record, it was the parties' intention that the nature of the attorney-client relationship be continuous, with payment to appellee occurring only at the conclusion of all services to be provided the decedent, that point in time necessarily occurring after Beck's death.

In light of the above discussion, we necessarily conclude appellant's reliance upon R.C. 2305.07 to be improper, and we accordingly overrule appellant's fourth assigned error.

It is also contended by appellant that the trial court erred in finding that there existed an agreement between appellee and the decedent for the amount of legal fees to be paid the appellee. Raised in the alternative is the argument that if such an agreement existed, the agreement by its very nature was presumptively unfair, which was never overcome by evidence establishing its fairness.

It is well-established law in Ohio that judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the

---

[1] R.C. 2305.07 provides:

"Except as provided in section 1302.98 of the Revised Code, an action upon a contract not in writing, express or implied, or upon a liability created by statute other than a forfeiture or penalty, shall be brought within six years after the cause thereof accrued.''

manifest weight of the evidence. *C. E. Morris Co.* v. *Foley Constr. Co., supra.* The mere fact that a reviewing court differs from a determination of the trial court is not sufficient to reverse a case on the weight of the evidence; rather, the determination must be so manifestly against the weight of the evidence as to shock the conscience by permitting it to stand. See *Watt* v. *Feuerlicht* (App. 1941), 35 Ohio Law Abs. 509, 516. Upon this court's careful review of the trial court record, we find there existed sufficient evidence upon which the trial court determined the existence of a fee agreement between Kenneth C. Beck and the appellee.

The trial testimony of the appellee provided the evidence indicating the payment terms reached between appellee and Beck, in which all fees were to be based upon an hourly rate. Actual payment of such fees, however, was to be deferred until Beck's death and was to be paid from the decedent's estate. Also contained in the record is evidence of services rendered to Beck with regard to the planned distribution of his estate upon his death, as well as correspondence had between appellee and various charitable organizations in an attempt to effectuate the memorial plans sought by Beck. Appellee further testified that additional services were continuously provided to Beck, but were often not recorded, and that the records maintained concerning the services rendered to the decedent, from approximately 1958 to 1970, were inadvertently disposed of by members of his prior firm.

Testimony was also provided by Nelson Friedman, who, as Vice-President of the Trust Department for Cleveland Trust Co., had occasion to know of the services provided by appellee on behalf of Beck. Friedman provided corroborating testimony concerning the parties' agreement that payment of appellee was only to occur upon Beck's death, with such payment being made from his remaining estate.

Though appellant relies upon a November 15, 1976 correspondence sent to Egert by Beck, concerning the amount of attorney's fees owed to the appellee, there exists substantial conflicting evidence to indicate that the decedent did not contest the amount owed appellee. Specifically, the December 30, 1976 bill rendered by appellee was provided in accordance with the decedent's request. Appellee testified that the final figure of $50,000 was reached only after numerous discussions with the decedent regarding the hours worked and the hourly rate charged. This bill was rendered *after* the relied upon November 15, 1976 correspondence was sent to Egert, and at no point in the record is evidence presented to show that this amount was contested or deemed excessive by Beck.

Furthermore, though the contention is made that appellee failed, as a matter of law, to prove the fairness of the fee agreement reached, we are compelled to respectfully disagree with this contention. As previously outlined, the trial court was presented with ample evidence concerning the nature and extent of services provided to Beck. Though the record lacks a substantial amount of the time records claimed to have been maintained regarding the hours of actual services provided by the appellee, appellee's direct testimony established an approximation of the hours spent by him in the employ of Kenneth C. Beck.

Also provided for the trial court's review was the expert testimony of Michael Gavin and Robert O. Fricke, concerning the degree of legal expertise necessary to accomplish the demanded goals of Beck, and the salary such legal expertise normally demanded within this immediate legal community.

While there exists an implied duty on the part of an attorney to keep an account of the time involved in a matter under consideration for the determination of his fees, such time records are not absolutely mandatory. See *In re Estate of Wood* (1977), 55 Ohio App. 2d 67 [9 O.O.3d 225].

In the case at hand, the trial court had before it the testimony of the witnesses and exhibits produced, as well as expert testimony concerning the value of such services. Though the testimony of such witnesses varied and would permit reasonable minds to reach different conclusions upon the issues of fact, the trier of the facts, in this case the trial court, was the sole judge of the credibility of the witnesses. *In re Estate of Wood, supra.*

In reaching the conclusion that there existed a fee agreement between the appellee and the decedent, Kenneth C. Beck, the judgment of the trial court was not against the manifest weight of the evidence. Moreover, in light of the record which contains ample evidence with regard to the nature, extent and value of services provided by appellee, we are compelled to hold that the trial court was correct in concluding that the contract for legal services provided to Kenneth C. Beck was fair. Accordingly, appellant's second, third, and fourth assigned errors are overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

O'NEILL and BROGAN, JJ., concur.

O'NEILL, J., of the Seventh Appellate District, and BROGAN, J., of the Second Appellate District, sitting by assignment in the Eighth Appellate District.