**STANDARD "TOTE" Inc., Appellant, v. OHIO STATE RACING COMMISSION, Appellee.**
**MIDWEST TOTALIZOR COMPANY, Appellant, v. OHIO STATE RACING COMMISSION, Appellee.**
**OHIO SPORTS ENTERPRISES, Inc., Appellant, v. OHIO STATE RACING COMMISSION, Appellee.**
**RIVER DOWNS OF OHIO, Inc., Appellant, v. OHIO STATE RACING COMMISSION, Appellee.**
**ASCOT PARK JOCKEY CLUB, Appellant, v. OHIO STATE RACING COMMISSION, Appellee.**

Common Pleas Court, Franklin County.

Nos. 189156, 189157, 189158, 189159, 189160. Decided May 1954.

E. G. Fickell, Columbus, for appellants, Standard "Tote" Inc. and Midwest Total. Co.

Holbrock & Bosch, Hamilton, for appellant, Ohio Sports Enterprises, Inc.

Charles A. Schwenker, Arthur L. Rowe, Columbus, for appellant, River Downs of Ohio.

Hershey, Hatch & Browne, Akron, for appellant, Ascot Park Jockey Club.

C. William O'Neill, Atty. Genl., Hugh A. Sherer, Asst. Atty. Genl., Columbus, for appellee, Ohio State Racing Commission.

## OPINION

By BARTLETT, J.

1. THE PROCEDURAL REQUIREMENTS IN ADOPTING AND AMENDING RULES 41, 49, 50 and 257, HAVE BEEN SUBSTANTIALLY COMPLIED WITH BY THE STATE RACING COMMISSION, IN ITS ORDER OF JANUARY 12, 1954, RELATING TO THE ADOPTION AND AMENDMENT OF THE AFORESAID RULES.

2. THAT SAID RULES 41, 49, 50 and 257, APPEALED FROM IN THE AFORESAID CASES, REPRESENT A REASONABLE AND LAWFUL EXERCISE OF THE POWERS OF SAID STATE RACING COMMISSION; THAT SAID RULES ARE VALID; AND THAT THE ORDER OF SAID COMMISSION IN ADOPTING AND AMENDING SAID RULES, IS HEREBY AFFIRMED

Each of these cases constitute an appeal from an order of the Ohio State Racing Commission regarding adoption and amendments of Ohio Rules of Racing made on January 12, 1954. Appellants each filed with the Ohio State Racing Commission notice of appeal on January 25, 1954; and on said date each of the appellants filed in this court their respective appeals in the foregoing cases, which appeals were from the Journal Entry of Order of the Commission issued January 12, 1954, entitled "In Re: The Adoption, Amendments and Rescission of Certain Ohio Rules of Racing."

These appeals are prosecuted under the provisions of the Administrative Procedure Act (Chapter 119, Revised Code); and involve two issues, one procedural and the other substantive.

These appeals raise the following questions:

(1) As to proposed rules 41, 49, 50 and 257, is the Commission's order invalid for want of compliance with the provisions of §119.03 **R. C.**, relative to public notice of the hearing at which the proposed rules were considered?

(2) Finally, are the proposed rules 41, 49, 50 and 257 unlawful and unreasonable? In other words, is the rule-making power conferred on the Commission in §3769.03 **R. C.**, a constitutionally valid delegation? And if so, are these four proposed rules within the scope of the Commission's rule-making power?

**Sec. 119.02 R. C.** of the Administrative Procedure Act, provides:

"Every agency authorized by law to adopt, amend, or rescind rules shall comply with the procedure prescribed in §119.01 to §119.13 inclusive, **R. C.**, for the adoption, amendment, or rescission of rules. Unless otherwise specifically provided by law, the failure of any agency to comply with such procedure shall invalidate any rule or amendment adopted, or the rescission of any rule."

The pertinent part of §119.03 R. C., of said Administrative Procedure Act is as follows:

"In the adoption, amendment, or rescission of any rule an agency shall comply with the following procedure:

"(A) Reasonable public notice shall be given at least thirty days prior to the date set for a hearing, in such manner and form and for such length of time as the agency determines and shall include:

"(1) A statement of the agency's intention to consider adopting, amending, or rescinding a rule;

"(2) A synopsis of the proposed rule, amendment, or rule to be rescinded or a general statement of the subject matter to which such proposed rule relates;

"(3) The date, time, and place of a hearing on said proposed action. In addition to such public notice the agency may give whatever other notice it deems necessary. Each agency shall adopt a rule setting forth in detail the method which such agency shall follow in giving public notice as to the adoption, amendment, or rescission of rules.

"(B) The full text of the proposed rule, amendment, or rule to be rescinded shall be filed with the secretary of state at least thirty days prior to the date set for the hearing and shall be available at the office of the agency in printed or other legible form without charge to any person affected by such proposal. Failure to furnish such text to any person requesting it shall not invalidate any action of the agency in connection therewith.

"(C) On the date and at the time and place designated in the notice, the agency shall conduct a public hearing at which any person affected by the proposed action of the agency may appear and be heard in person, by his attorney, or both, may present his position, arguments, or contentions, orally or in writing, offer and examine witnesses, and present evidence tending to show that said proposed rule, amendment, or rescission, if adopted or effectuated, will be unreasonable or unlawful.

"At such hearing a stenographic record of the testimony and rulings on the admissibility shall be made at the expense of the agency.

"* * * (D) After complying with divisions (A), (B) and (C) of this section, the agency may issue an order adopting such proposed rule, amendment, or rescission, or revision thereof, consistent with the public notice * * *."

The notice actually published is shown by a copy on page 5 of the record, as well as on page 7 of the exhibits attached thereto, the pertinent part of which is as follows:

"(Published November 6, 1953)
"Public Notice"

"Pursuant to Rule 303, Ohio Rules of Racing, notice is hereby given that the Ohio State Racing Commission will hold a public hearing * * * to consider adopting, amending or rescinding the following numbered Rules of Racing: * * * Rules 41, 49, 50 * * * relating to Permits to Race; * * * Rules 256 and 257, corrupt Practices * * *

"Ohio State Racing Commission
Edward Corrigan, Acting Secretary."

On the subject of the published notice required by §119.03 R. C., supra, it is conceded by the very able counsel for the Commission, that the notice in the instant case does not amount to a synopsis, but claims it is sufficient to constitute "a general statement of the subject matter to which such proposed rule relates."

Counsel for appellants stress the alleged inadequacy of the published notice because it lacks a "synopsis" as required by such statute. Actually this statute (§119.03 R. C.) does not require such synopsis, for the use of a synopsis, is only one of the alternatives that may be used by an agency. (Emphasis ours.) The language of this statute after referring to such synopsis is followed by the disjunctive "or," thus making it optional that in the words of the statute itself, "a general statement of the subject matter to which the proposed rule relages (relates)" may be substituted for such synopsis.

As stated by counsel for the Commission, the appellants for some years have been in the business of operating race tracks, or businesses very closely associated with such operation, and they may, therefore, be presumed to know in complete detail the provisions of existing rules 41, 49, 50 and 257. With such knowledge, a reference in the public notice to these rules by number and subject matter, is much more meaningful to them than persons not interested in racing. It would seem, therefore, as to the appellants there was a substantial compliance with the statute; and this view is supported by the fact appellants were represented in such hearing by counsel, who offered considerable evidence, comment and argument addressed to details of the proposed rules.

Finally, when a party is actually present at a hearing, participates therein by offering evidence and arguments, and has ample opportunity to be heard on amendments to a rule or rules, such party cannot justly complain that the public notice of the hearing did not strictly comply with the statute. State ex rel v. Railway, 69 Fla. 480.

Counsel for appellant River Downs of Ohio, Inc. in oral

argument, notwithstanding their very active part in the public hearing, insisted that substantial compliance with the statute on the public notice was not sufficient, and the strict compliance therewith was necessary. In their brief. however, they cite **Board of Education v. Briggs, 114 Oh St 415,** to the effect that "The provisions of §5649-9c GC, enacted for the benefit and protection of the taxpayer, are mandatory and **must be substantially complied with.**" (Emphasis ours.)

Said §5649-9c GC, prescribed the form on the ballot used in submitting a tax levy to the electors of the district.

Counsel for appellant, River Downs of Ohio, Inc., in their brief, cite 39 Am. Jur. Section 21 on Notice and Notices in part as follows:

"No one is chargeable with a constructive notice of a statement * ¹ * in a newspaper in the absence of a statute expressly authorizing such publication * * * unless it be seen by the person to be charged. In other words, the notice is either actual or is inoperative * * *."

The same appellant also cites **30 O. Jur., Section 32, p. 241,** under title "Notice."

"* * * When the form and manner of the notice are not prescribed, actual notice is generally required * * *."

This appellant also cites **Moore v. Given, 39 Oh St 661, Syl. 2:**

"When a statute required notice of a proceeding but is silent concerning its form or manner of service, actual notice will alone satisfy such requirement."

"Of course when a person knows of a thing he has 'notice' thereof, as no one needs notice of what he already knows. In other words, actual knowledge supersedes a requirement of notice." 39 Am. Jur. Notice and Notices, p. 234; **In Re Hamlin, 54 Abs 257; 30 O. Jur. Notice, Sec. 12, p. 18, 1953 Supp.,** citing Vol. 2 Pomeroy's Equity Jurisprudence, 5th Ed., Notice, p. 502.

In the instant case appellants made no request at the hearing for a continuance in order that they might submit further evidence and argument on the rules actually proposed at the meeting in which they participated actively, and the inference is that the published notice and the copy of the full text of the proposed rules available to them in the Secretary of State's office were such that they did not feel the need of such a continuance.

In the briefs of appellants, Ohio Sports Enterprises, Inc. (p. 4) and River Downs of Ohio, Inc. (p. 13), it is claimed that the rule as adopted is invalid because it did not conform verbatim with the drafts on file in the Secretary of State's office. **Sec. 119.03 R. C.,** expressly provides:

"(D) After complying with divisions (A), (B), and (C) of this section, the agency may issue an order adopting such proposed rule, amendment, or rescission, **or revision thereof,** consistent with the public notice \* \* \*." (Emphasis ours.)

Division (B) requires the full text of the proposed rule, amendment, \* \* \* to be filed with Secretary of State, so the Commission is expressly authorized at its hearing to revise the text filed under division (B). Such an argument completely ignores the fundamental reason for the public hearing, designed to afford interested parties the opportunity to present evidence and arguments to the agency concerned for the purpose of securing a revision of the rule to eliminate objectionable features.

It appears to the Court that the claim of the appellants that the Commission's order adopting said rules, was invalid for want of compliance with §119.03 R. C., relative to the public notice of the hearing at which the proposed rules were considered, is without merit, and must, therefore, be disregarded. In other words, the record shows a substantial compliance with the statutory provisions relating to the promulgation of the rules in question, and the appellants have no right to complain that such provisions were not strictly complied with.

It is argued by certain of the appellants that the statute (§3769.03 R. C.) which confers power on the Commission to "prescribe conditions" under which horse racing may be conducted purports to confer arbitrary power because it sets no guides or standards.

This contention of the appellants is completely refuted by the 7th paragraph of the syllabus in **Matz v. Curtis Cartage Co., 132 Oh St 271,** which is as follows:

"As a general rule a law which confers discretion on an executive officer or board without establishing any standards for guidance is a delegation of legislative power and unconstitutional; but when the discretion to be exercised relates to a police regulation for the protection of the public morals, health, safety or general welfare, and it is impossible or impracticable to provide such standards, and to do so would defeat the legislative object sought to be accomplished, legislation conferring such discretion may be valid and constitutional without such restrictions and limitations."

In the case of **Weber v. Board of Health, 148 Oh St 389,** the ruling in the Matz case, supra, was expressly approved, the second paragraph of the syllabus is as follows:

"Where a law relates to a police regulation for the protection of public health, and it is impossible or impractical to provide specific standards, and to do so would defeat the legis-

lative object sought to be accomplished, such law is valid and constitutional without providing such standards. (Paragraph seven of the syllabus in **Matz, Admr., v. J. L. Curtis Cartage Co., 132 Oh St, 271,** approved and followed.)

Horse racing and legalized wagering thereon, are subjects with respect to which police regulations for the protection of the public safety, morals, and general welfare, are not only proper but are an absolute necessity. Since this is a field in which potential evils abound, the General Assembly should not be expected to anticipate the manifold practices and complex arrangements which involve opportunities for dishonest dealing that should be guarded against so as properly to protect the public.

For the General Assembly to undertake to properly prescribe standards, might defeat its own purpose. The nature of the subject to be regulated is such as to suggest the reason for the broad regulatory powers conferred on the Commission; and the suggestion of the appellants that the rule-making power in this instance is wholly invalid, ignores the plain import of the Ohio decisions in the field of public administrative law. The very essence of the rule-making power is found in the authorityy to impose by rules restrictions or burdens in addition to those imposed by state, provided the rules do not subvert the statutes imposing such power. 42 Am. Jur. 353, 354, Sec. 49.

"Under the provisions of the Horse Racing Act (§1079-1 to §1079-15 GC), the State Racing Commission is empowered to prescribe rules and regulations governing parimutuel betting." **In re: Adoption of certain rules of the Ohio Racing Commission, 90 Oh Ap 469.**

In this case the Court of Appeals of this district upheld the judgment of the Trial Court in the case of Beulah Park Jockey Club v. Racing Commission, No. 178539, in which the Court of Appeals refers to the "well considered" opinion of Clifford, J. Motion to certify was denied by the Supreme Court, January 23, 1952.

It is thus the established law in Ohio, under the Beulah Park Jockey Club case, supra, that the Commission has not only the power "to regulate the actual running of the horses," but also, "The Commission has power under the Horse Racing Act to regulate parimutuel wagering."' In other words, said last mentioned case is authority for the legal proposition that the rule-making power conferred on the Commission by §3759.03 R. C., is a valid delegation of power.

This being true, the next question must be, are the four Rules in question, beyond the scope of the Commission's rule-making power?

"The purpose of the General Assembly in providing for administrative hearings in particular fields was to facilitate such matters by placing the decision on facts with board or commissions composed of men equipped with the necessary knowledge and experience pertaining to a particular field." Turner, J., p. 224 in the case of **Farrand v. Medical Board, etc., 151 Oh St 222.**

Whether the Ohio Horse Racing Act (§3769.01 to §3769.13 R. C.), prescribes a wise plan is not for the courts to decide, so long as the act is constitutional; questions of policy are solely for the General Assembly to determine; and such act provides the General Assembly's plan to regulate and control through the Commission, not only the actual running of the horses, but, also parimutuel wagering on such horse races. **State ex rel. Williams v. Glander, Tax Commr., 148 Oh St 188.**

The Courts must exercise care not to place themselves in the position of usurping such "regulation and control" and should carefully avoid hampering the agency duly authorized by constitutional enactment to provide such regulation and control; otherwise the Courts may find themselves responsible for the de-control of such horse racing and such wagering thereon.

Counsel for the appellant, Ascot Park Jockey Club, in his reply brief after quoting from Judge Clifford's opinion in the Beulah Park Jockey Club case, has this to say: (p. 8):

"It is crystal clear that the basis of Judge Clifford's conclusion as to the extent of the Commission's rule-making power is the legislative intention to regulate wagering."

"It is not impertinent to observe that the quality of any argument or judgment, whether it is asserted by a litigant or declared by a Court, is no better than the logic supporting its foundation.

&ast; &ast; &ast; &ast;

"Now can any logical conclusion be drawn as to the extent of a board's rule-making power just from the legislative intent to regulate? A mere statement of the question shows the invalidity of any such conclusion."

Let us quote from the Per Curiam opinion of the Court of Appeals of this District as its reaction to Judge Clifford's opinion, (90 Oh Ap 469, 470):

"We have been furnished a copy of the well considered opinion of the Judge of the Trial Court in which he discusses all the determinative issues raised. We have carefully examined the entire record and considered questions raised in the briefs of counsel and are in accord with the judgment and the reasons assigned by the Trial Court. We do not deem it neces-

sary to write an extended opinion. In our opinion the judgment is correct and it is hereby affirmed."

It is thus the established law in Ohio that the rule-making power of the Racing Commission is not limited to the power "to regulate the actual running of the horses," but that "the Commission has power under the Horse Racing Act to regulate pari-mutuel wagering."

Regulation of parimutuel wagering is plainly a regulation of the primary and most important activity of permit holders; and it follows that if their activities in this field can be regulated by rule, then similar regulation in activities incidental thereto cannot be deemed to be invalid.

Appellants argue that the General Assembly by imposing certain restrictions on permit holders has thereby evinced an intent that such restrictions were to be exclusive, tnus denying the power to impose others by rule. In fact appellants (Brief pages 17, 18) claim the Commission's power is limited to regulation of "the physical act of horse racing." This same argument was advanced in the Beulah Park Jockey Club case, supra, but was expressly repelled by Judge Clifford's ruling in that case.

Statutory provisions which authorize the carrying on of a gambling business should be strictly construed and every reasonable doubt so resolved as to limit the powers and rights claimed under its authority. 24 Am. Jur. 404, Sec. 9.

Let us now examine the several rules appealed from herein.

**Rule 41.** This rule as adopted by the Commission would limit racing on any day to eight races at any track except Saturdays, holidays, and in certain instances where special permission is granted.

The statute makes no provision as to the number of races a permit holder may conduct on any one day. This rule cannot be said to "subvert the statute" in this respect, and, therefore, the Commission has the power to impose restrictions beyond those of the statute. The Beulah Park decision, supra, recognizes the statute as an exercise of police power, as well as a revenue act. In any event, the statute must be strictly construed as to the permit holder's privileges thereunder. 24 Am. Jur. 404, Sec. 9, supra.

**Rule 49.** This provides for the submission of certain statistical data, reports of operations, attendance, and other matters by permit holders to the Commission. The principal change in this rule is to eliminate the following provision in the existing rule:

"* * * Such statement shall be used only for the information of the Commission."

The primary purpose cf the change in Rule 49 is to conform to the judicial decisions in Ohio, that "public records are the people's records," and as such are open to inspection at all proper times for all proper purposes. **35 O. Jur. p. 45, Sec. 41.** After all, the rule represents one of the most common and most exercised uses of the administrative rule-making power.

**Rule 50.** Certain of the appellants assert that "the Commission has absolutely no power whatever to supervise or regulate pari-mutuel wagering," principally because they claim the statute authorizes two systems of wagering, i. e., either the pari-mutuel or the certificate system of wagering. The Beulah Park decision, supra, rejected this view and plainly approved the concept that the General Assembly was concerned with one system only, and the Commission might properly require the use of totalizators at such tracks. The hyphenated word "pari-mutuel" has been construed to be identical with the so-called "pari mutuel system." Wise v. Delaware Steeplechase and Race Assn. 18 Atl. (2d) 419; Mattson v. Hollywood Turf Club, 225 Pac. (2d) 276; Rohan et al. v. Detroit Racing Assn. et al. 22 N. W. (2d) 433, 314 Mich. 326; and Streeper v. Auditorium Kennel Club, et al, 180 Atl. 212, 13 N. J. Misc. 584. It follows that the Commission may designate the type of totalizator designed to protect the public.

The Beulah Park decision, supra, recognizing the statute as an exercise of police power, as well as a revenue act, is also applicable to this rule. The strict construction against claims of permit holders is also applicable. 24 Am. Jur. 404, supra.

It is also argued by certain of the appellants that the rule requires permit holders to use a certain approved type of totalizator whose Daily Average Handle was in excess of $200,000 while permitting those whose said Handle was less to use their own judgment as to the type of totalizator they will use.

They assert this is class legislation, never intended by the General Assembly; and that the rule is not of uniform operation, since it does not apply to all permit holders.

It is the well settled law that the constitutional requirements of equal protection and uniform application of the laws may be based on reasonable classifications. Rapid Transit Corp. v. New York, 303 U. S. 573, 578; **Yee Bow v. Cleveland, 99 Oh St 269.** This Court cannot say the classifications resorted to under Rule 50 are not natural and reasonable in view of the problems involved and the purpose of the rule to afford the public protection.

The argument is also advanced by certain of the appellants that Rule 50 is invalid as its enforcement would interfere with

provisions of existing contracts of the permit holder for the service of certain totalizators. The courts recognize the administrative rule-making power to have the force and effect of law. Matz v. Cartage Co. and Weber v. Bd. of Health, supra. It is well established that the constitutional protection of the obligations of contracts is necessarily subject to the police power of the state, and that legislation in the exercise of such police power "will be upheld by the courts, although it incidently destroys existing contract rights." 12 Am. Jur. 54, Sec. 421.

**Rule 257.** The change in this rule is seen in the requirement that permit holders shall employ a veterinarian and a chemist, subject to the approval of the Commission, to take specimens of urine and saliva and to analyze such specimens at the expense of the permit holder to detect doping.

If this Rule is invalid, then it follows that the rules providing for stewards, patrol judges, placing judges, and the photo finish camera are equally invalid.

The elimination of these safeguards to the betting public would reduce racing in Ohio to a sorry state. Such absurd consequences should be avoided in the interpretation of statutes, if reasonably possible. 37 O. Jur. 643, 644, Sec. 352. Any rule which is for the insurance of wholesome and honest racing should be welcome, not only by those engaged in that business and its incidental phases; but should receive a favorable interpretation by the courts. Short-sighted reception of such regulations can lead only to the killing of the goose that laid the golden egg, both as to the state's revenue, as well as the Commissions of the race track interests.

The Court accordingly finds that the State Racing Commission has the power, under the Horse Racing Act, not only to regulate and control "the conditions under which horse racing shall be conducted," but also, "to regulate and control pari-mutuel betting" thereon. The Court further finds that Rules 41, 49, 50 and 257, appealed from represent a reasonable and lawful exercise of the powers of the Commission; that said rules are valid; and that the order of the State Racing Commission in adopting said four rules aforesaid is affirmed. Entry accordingly, reserving the exceptions of counsel for each of the appellants.