**RULES AND REGULATIONS RELATIVE TO DRIVER TRAINING SCHOOLS, Adoption of, In re.**

Common Pleas Court, Franklin County.

No. 200738. Decided April 18, 1958.

Raymond A. White, Dayton, for appellants.

Charles G. Martis, Asst. Atty. Genl., for the Department of Highway Safety.

## OPINION

By SATER, J.

Amended House Bill No. 159 enacted by the 102nd General Assembly, was embodied into §§4508.01 to 4508.07 inclusive, R. C., and §4508.99 R. C., with the title "Driver Training Schools" under Title 45, so embodied it became effective January 1, 1958. Statedly, none of these statutes is here challenged but some description of them is apposite to a disposition of this case.

Sec. 4508.01 R. C., defines "commercial driver training schools" and "instructors" therein. Sec. 4508.02 R. C., reads as follows:

"(A) The director of highway safety shall, subject to the provisions of §§119.01 to 119.13 R. C., both inclusive, adopt and prescribe such regulations concerning the administration and enforcement of §§4508.01 to 4508.07 inclusive, R. C., as are necessary to protect the public. The director shall inspect the school facilities and equipment of applicants and licensees and examine applicants for instructor's licenses.

"(B) The director shall administer and enforce §§4508.01 to 4508.07 inclusive, R. C., and may call upon the state superintendent of public instruction for assistance in developing and formulating the regulations."

Sec. 4508.03 R. C., establishes the requirements for licensing of such schools. Its second paragraph refers back to the regulations mentioned in §4508.02 R. C., and states:

"The regulations shall state the requirements for a school license, including requirements concerning location, equipment, courses of instruction, instructors, previous records of the school and instructors, financial statements, schedule of fees and charges, character and reputation of the operators, insurance in such sum and with such provisions as the director deems necessary to protect adequately the interests of the public, and such other matters as the director may prescribe for the protection of the public."

Sec. 4508.04 R. C., covers the licensing of instructors; §4508.05, R. C., license fees; §4508.06 R. C., suspension or revocation of license; §4508.07 R. C., exemptions, and §4508.99 R. C., is the penalty section. Seven other states have similar statutes directed to the same purpose as Amended House Bill No. 159; the propriety of none of them has ever been challenged.

Pursuant to these statutes, particularly those quoted above, and in full compliance with the Administrative Procedure Act, the director, advertised as required in newspapers and held open meetings with all such as would be affected and who cared to attend, for the purpose of establishing the rules and regulations required. These meetings were held September 16, 1957, October 8, 1957, January 21, 1958, and January 29, 1958; by the time the last meeting was held, the rules and regulations were so well formulated that a small committee representing different bodies, groups, and interests was substituted for an open meeting. The "Minutes" of the January 21, 1958, meeting show how thoroughly the director's proposals were discussed, and certainly substantially revised. Through it all was the full cooperation of the State Superintendent of Public Instruction.

Thus under the aegis of the director and his agency, the State Highway Patrol of which he is director and which he had obviously chosen, in his discretion, as his direct administrating and enforcing arm, there emerged the required rules and regulations fully and properly fulfilling the statutory requirements.

Twenty-one rules are preceded by a preamble and a list of twelve definitions, these latter to assist an understanding of the rules and regulations. The last paragraph of the preamble is enlightening; it reads:

"The following rules are designed to protect not only the persons doing business with commercial driver training schools, but also the public in general. They will prevent undesirable persons from operating commercial driver training schools, and will insure that the students are better trained, thereby contributing to general highway safety."

Five individuals, for themselves and assertedly for others similarly situated, have brought this appeal not from all twenty-one of the rules and regulations but from only certain portions of Rules VIII, IX and all of XVII (for the sake of brevity, only the affected portions of Rules VIII and IX are set forth). They read:

### VIII

"WRITTEN AGREEMENTS. An agreement must be established between the applicant and the school, and shall include the type of training to be received **and the number of hours of instruction to be given,** in either the theoretical or practical training or both. The minimum requirements must meet the standards set forth in Section 5 of these rules and regulations."

### IX

"RECORDS. Every commercial driver training school shall maintain adequate records to include . . . (stated matters plus the following.) (e) These records must be kept at the place of business and shall be open for inspection by the Department of Highways Safety or the State Highway Patrol representatives at all reasonable times. **No school shall agree to give unlimited lessons nor shall any school represent or agree orally or in writing, or as a part of an inducement to sign any agreement, to give instructions until a license is Obtained."**

### XVII

"TESTS, APPOINTMENTS. **It shall be the responsibility of each student of an authorized commercial driver training school to make his or her own appointment for a driver license examination. No examination will be given in a dual control car."**

Light will be shed on the challenged portion of Rule VIII, quoted above by setting forth Rule V to which it refers, it reads:

### V

"CLASSIFICATION OF SCHOOLS—Schools shall be licensed as Class A, B, or C schools.

"(a) Class A schools shall give a minimum of eight clock hours of classroom instruction in a beginner's course, and a minimum of seven clock hours of behind-the-wheel instruction in automatic shift cars in a beginner's course. A student having received the required hours of instruction for an automatic shift car may qualify for standard shift car with an additional 2 hours of instruction in a standard shift car. If all instruction in a beginner's course is given in a standard shift car, the minimum number of clock hours is nine (9).

"(b) Class B schools provide only the behind-the-wheel practical instruction, but shall meet the standards for such practical instruction under a Class A school. Class B schools may offer classroom instruction not meeting the minimum 8 hours required for a Class A school.

"(c) Class C schools offer only the theoretical instruction, but shall

meet the minimum requirements of 8 classroom hours as designated in Class A."

Since no testimony was taken at any time, the Court must rely on the statutes, the rules and regulations themselves, the unsworn "Minutes" of the January 21, 1958, meeting and the arguments of counsel as transcribed.

It is settled that a state may license and regulate a business when necessary for the public health, morals, comfort, order, safety or welfare. Further, public interest may mean no more than that the business for adequate reason is subject to control for the public good. In the case at bar, the need for this legislation has arisen from present public necessity, safety and welfare. See State v. Wheeler Auto Driving School, Inc., 17 N. J. Super. 488, 86 Atl. 2d 442, which involved a far more nebulous rule-making delegation than the statutes quoted above. Insofar as the statutes here involved confer power on the director to prescribe regulations covering public safety or welfare of those students attending the schools in question delegate administrative power to the director, they are not in contravention of Article II, Section 1, Ohio Constitution, and are per se valid. Matz, Adm'r v. Cartage Co., 132 Oh St 271. Secs. 4508.02 and 4508.03 R. C., together with the preamble to the rules and regulations, adequately bring them well within the ambit of the principles just enunciated.

But since this is the field of the quase-judicial, statutory guides must usually be established to govern administrative discretion in rule making. See the Wheeler case, supra. This test, this limitation is adequately and fully met by §4508.03 R. C., far more so, for example, than is the Motor Carrier Law, Chapters 4921 and 2923 R. C., which have been administered for decades and years by the Public Utilities Commission of Ohio. Were it here necessary to do so, it might be noted in Dayton Power, etc. Co. v. Pub. Utl. Comm., 292 U. S. 290, 309, 78 L. ed., 1267, 1280, that "there is an indeterminate penumbra within which choice is uncontrolled" however unpleasant the exercise of that choice may be to one or the other. Certainly these rules and regulations are neither capricious nor arbitrary. Nor need the director disregard the recommendations of his own experts simply because they disagree with others. Gas Co. v. Pub. Util. Comm., 119 Oh St 24, 28-29.

Appellants laid considerable stress on Weber v. Bd. of Health, 148 Oh St 389, which, in a 4-3 decision which has been steadily subject to harmonization and explanation ever since its rendition, turned largely on two factors, (1) the action there involved completely prohibited an otherwise lawful business, and, (2) the action there involved a delegation of legislative power from a board which in itself had no legislative power to start with. Neither of those factors are present in the case at bar. If a third factor was present in the Weber case, it is also lacking here, to wit, the lack of standards. A case much more closely in point is Longbrake v. State, 112 Oh St 13, 22, which noted that the failure to completely prohibit a business in the interest of public safety and welfare is no argument against utilizing the police power to only a portion of the field.

Furthermore, there is much in the Weber case, supra, that is helpful

to the sustaining of the rules and regulations involved in the case at bar. Sometimes, as in the case of public safety, the legislative creation of standards is impossible. Said the Court on pages 396-397:

"However, it is recognized that there are many occasions where the nature of the problem makes it impossible to lay down standards, and as a result rule-making bodies must be allowed a wide discretion without anything as their guide except the general policy of the law-making body and the law that such bodies must not legislate or make rules which are unreasonable, discriminatory, or contrary to constitution of rights.

"That situation is usually present in reference to questions of public morals, health, safety or general welfare. * * *."

This is in full accord with the eighth syllabus of the Matz case, supra, which supports the principle that a school which is engaged in teaching the art of safe driving upon the public highways of this state is so clothed with public interest that the legislature in authorizing the director in the case at bar to make safety rules as a condition upon which the rights of the licensed school so to operate without establishing standards, does not delegate legislative power to the director. See, also, the very recent opinion of Judge Bartlett in Standard "Tote" Inc. v. Commission, 68 Abs 19; 58 O. O. 337. At the same time its factual situation distinguishes Motor Ins. Corp. v. Dressel, 80 Oh Ap 505.

In the case at bar, the director inter alia utilized the facilities and experience of the State Highway Patrol, one of the two administrative agencies of which he is director and the agency most directly and immediately affected by the efficiency and effectiveness of the schools subject to the rules and regulations here under consideration. See "Minutes," supra, page 9. To assert that this is "delegation" of "re-delegation" of legislative power as distinguished from ordinary administrative procedure is as without merit as its unspoken but unavoidable counterpart that the director and the Superintendent of Public Instruction should alone, without utilization of any of the administrative facilities under their direction, have formulated the required rules and regulations. Nor may a letter from a legislative co-sponsor hamstring the discretion of the director; the remedy, if any, is amendatory legislation.

In the light of the foregoing discussion, we turn at last to the three bases of appeal.

I. In the first sentence of Rule VIII, appellants protest the requirement that their agreements with students must set forth "the number of hours of instruction" to be given. The "Minutes" of the meeting of January 21, 1958, and the oral arguments clearly indicate that the hours required are a minimum requirement and, further, by reference to Rule V, quoted above, we find that the only set number of required hours relates solely to beginner students. Certainly beginners must have a minimum period of instruction; equally certainly, the beginners are entitled to know what minimum they will receive for their money. Finally, the record is utterly devoid of any reason, good or otherwise, why "the number of hours of instruction" should be left either vague, indefinite or secret; the record and the rules and regulations are also

equally devoid of any prohibition against instruction of fewer hours than those set forth in Rule V to experienced drivers either from out-state or seeking simple refresher instruction. Nor is further instruction for inept students prohibited. Certainly, the requirement of precise designation of the number of hours of instruction is neither unreasonable, discriminatory, nor unconstitutional, it is their exact antithesis.

II. Appellants' second ground of appeal covers the entire last sentence of Rule IX, above, but covers two distinct matters and will be so treated here. The first matter is the first clause, "No school shall agree to give unlimited lessons * * *." An obvious protection to the public, this clause is in full accord with the first sentence of §4508.02 (A) R. C., and also with the portion of the preamble, both of which are quoted above. By no stretch of the imagination may this clause be held improper in any respect at all; the purpose of this clause is safety and welfare, not tutorial profit.

The second matter, covering the remainder of the last sentence of rule IX, above, provides that no school as defined in §4508.01 (A) R. C., shall "represent or agree orally or in writing, or as a part of an inducement to sign any agreement to give instructions until a license is obtained." This remainder is the necessary and inevitable result of paragraph one of §4508.03 R. C., which provides that "No commercial driver training school shall be established nor any such existing school continued on or after January 1, 1958, **unless such school applies for and obtains from the director of highway safety a license** in the manner and form prescribed by the director." (Emphasis added.) Since none of the statutes are statedly challenged, neither can lodgement be found for challenge to an inevitable resultant rule in almost verbatim execution of one of such statutes.

III. Appellants' third ground of appeal covers both sentences of rule XVII, quoted above. The first sentence places on each student of a regulated school the responsibility for making his or her own appointment for a driver license examination. This places all such students on a parity with those taught privately or in public schools. Such a rule does not discriminate; it removes discrimination, if any ever existed. It applies equally to all students of all categories. Nor is any cause furnished by appellants why it is unreasonable to require such students to make their own appointments. To the contrary, the argument of the attorney general on pages 50-51 of the transcript of argument shows amply why the requirement is both reasonable and practical.

The second sentence of Rule XVII provides that no examination will be given in a dual control car. This requirement fits perfectly with the word "equipment" found in §4508.03 R. C., quoted above; and added force is given the requirement by the attorney general on pages 52-53 of the transcript of argument—dual control car does not permit or furnish a true test of the student's ability. Nor is strength added to appellants' protest by the fact that at the January 21, 1958, meeting the use of such cars was asserted to be safer but conceivably "dual control cars might not be in order. That we will concede." See "Minutes," 43-44.

Throughout the whole proceeding we are impressed by the fact that

the Legislature and the director have been motivated by one sole purpose: safety to the public and protection of students in the regulated schools. Appellants protest like purpose, yet state they are interested "in safety and earning a living" and later complain of the financial hardship on them if certain rules are retained. See transcript of argument, pages 11, 25-26. Appellants' arguments and protestations throughout are thus closely akin to the comment of the court in Lindheimer v. Telephone Co., 292 U. S., 151, 175, 78 L. Ed. 1182, 1197, "Proving too much, they fail of the intended effect."

There being no substantial constitutional question involved, we are further, for reasons stated, not inclined to encroach upon the legislative policy declared in the regulations in question. They are, we find, valid and within the police powers of the state.

Appeal dismissed.