[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above-captioned action came before this court for trial on the merits of the plaintiff's claim of nonpayment of loans and the defendant's counterclaim likewise alleging nonpayment of monies claimed to have been loaned to the plaintiff during the course of their close personal relationship over a period of at least two years.
The plaintiff claims that while she did not ask the defendant to sign a note on each occasion that she loaned him money, he signed an acknowledgment of his debts to her on July 30, 1994. This document came into existence in an unusual way. The plaintiff testified that when her mother died in 1993, she became CT Page 11929 concerned that upon her own death her cash advances and other credit card balances would become the responsibility of her children. She expressed this fear to the defendant, who agreed that he would prevent this from happening by acknowledging that he would pay the outstanding balances. The acknowledgement which the parties have referred to as an "I.O.U." states:
 I Carleton L. Riddick, Sr. owe Marilyn W. Denehy $5,775.76, plus $3,600.00 plus $3,199.00 and promise to pay in full plus any additional charges incurred.
While on its face this document would appear to be evidence that the defendant owed the plaintiff the sums listed, the plaintiff's own testimony suggests that the defendant agreed to pay the amounts as an aid to her children, not because he owed her the money, and that it was agreed that the document was to be invoked only in case of the plaintiff's death. The court is mindful of the fact that persons who are not lawyers sometimes have misconceptions about the law and create documents that do not accurately reflect the transactions to which they relate Since the explanation of the origin and reason for the creation of Exhibit A is agreed to by the parties, the court finds that it does not constitute proof that each of the sums listed constituted obligations that the defendant has a duty to pay to the plaintiff. The plaintiff acknowledged that nothing of value was given to the defendant at the time he agreed to sign Exhibit A.
Because Exhibit A is not what it appears on its face to be, the court must decide whether the plaintiff proved that the defendant owed her money as claimed. The court finds that the defendant asked for and received from the plaintiff a loan in the amount of $6,000.00 in funds that the plaintiff obtained by a cash advance from her credit card account and that on August 18, 1993 he borrowed $1,225.00 from her to pay for health insurance.
The plaintiff admitted that the defendant had made payments in the amount of $769.00 as to her credit card cash advances; however the court finds that the defendant also made Western Union Quick Collect payments to her credit card accounts. The total of the payments made is $2,464.00. The court further finds that the defendant, who knew that the plaintiff would be incurring interest at credit card rates on her loans, agreed to pay the interest she incurred. The plaintiff has not, however, CT Page 11930 entered into evidence her credit card statements or any other evidence from which this court could determine the amount of interest paid.
The defendant claims in his counterclaim to have made loans to the plaintiff during the course of their relationship. He offered no credible testimony that the plaintiff ever agreed to repay any of the amounts claimed. The court finds that, the relationship having ended, the defendant is attempting to characterize as loans outlays that were in the nature of gifts or sharing of expenses.
The defendant claims that the plaintiff's persuading him to sign Exhibit A constituted an unfair trade practice violative of § 42-110 Conn. Gen. Stat. Since the defendant did not prove that the plaintiff was engaged in trade or commerce within the meaning of § 42-110b and 42-110(a)(4), this claim is meritless.
The plaintiff has claimed entitlement to attorney's fees; however, she has not established any contractual agreement to pay such fees. The court has found that Exhibit A is inapplicable, and it does not, at any rate, unambiguously provide for counsel fees but only "additional charges incurred," a phrase that seems likely to refer to charges on the credit cards, not collection costs in a breach of contract action. The Connecticut Supreme Court has ruled that "a party cannot recover attorneys' fees in the absence of statutory authority or a contractual provision." Doe v. State, 216 Conn. 85, 106 (1990); Marsh, Day Calhoun v.Solomon, 204 Conn. 639, 653 (1987).
The court finds that the plaintiff has proved that she loaned the defendant $7,225.00, that he asked for these amounts as loans, not gifts, and that he has repaid $2, 464.00. The defendant has not proved his counterclaim by a fair preponderance of the credible evidence.
JUDGMENT
Judgment shall enter in favor of the plaintiff in the amount of $4,761.00 plus interest pursuant to § 37-3a from October 3, 1995, that is $1,017.20 to date, plus statutory court costs to be taxed upon application to the clerk of the court. Judgment shall enter in favor of the plaintiff as to defendant's counterclaim. Additional interest is payable at the rate of $1.58 CT Page 11931 per day until payment is made.
BEVERLY J. HODGSON JUDGE OF THE SUPERIOR COURT