[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION INTRODUCTION
This is an action to foreclose several parcels of real property in Thomaston, Connecticut. The plaintiff mortgagee, Martha Schlicher, filed a second revised complaint on January 29, 1998 and a third amended complaint on August 21, 1998 against the defendant mortgagor, Kenneth Schwartz. In both complaints, Schlicher alleges that Schwartz failed to pay property taxes; that Schwartz breached a contract between the parties; that Schwartz was unjustly enriched; that Schwartz breached an implied covenant of good faith and fair dealing; and that the contract between the parties was unconscionable and without adequate consideration.
By answer dated August 31, 1998, Schwartz denied all of Schlicher's causes of action and alleged two special defenses. In the first special defense, Schwartz asserts that the mortgage is invalid because it does not contain a defeasance clause.[1]
Schwartz's second special defense is that the debt alleged by Schlicher is insufficient to justify foreclosure of the property.
The case was tried on November 17-19, 1998. Schlicher's daughter, Ellen Schlicher, and Schwartz testified at the trial and both parties presented exhibits and other witnesses. In March 1999, the parties filed their trial briefs which include proposed findings of fact and memoranda of law.
 FACTS
Based on the credible evidence presented at trial, the court finds the following relevant facts. Schlicher, who is now 88 years old, owned approximately 64 acres of real property on Smith Road in Thomaston, Connecticut. Schwartz, a former friend of the Schlicher family, represented to Schlicher that it was his desire to develop her property. (Transcript, dated Nov. 17, 1998, p. 32). Schwartz has been a licensed architect in the State of Connecticut since 1976, and he has held himself out to be a developer during the years prior to the commencement of this case. Schwartz is currently employed by the City of Hartford as Chief Staff Planner.
On January 29, 1989, Schlicher and Schwartz entered into a purchase and sale agreement for Schlicher's 64-acre property. (Plaintiff's Exhibit 2, 4). The terms of the sales contract provided for a total sales price of $400,000. (Id.). The terms of the sale provided for a $15,000 deposit and a payment of $85,000 at the time of the closing. (Id.). The remaining $300,000 was CT Page 6087 secured by a mortgage and promissory note at 8.5 percent interest. (Pl.'s Ex. 3, 5). The closing on the property took place on February 14, 1989. (Id.). Schlicher's intention was to obtain funds from the sale to support herself in her senior years.
Schwartz did not make any payments on the principal amount of the mortgage. He made four interest payments to Schlicher, totalling approximately $22,000. (Tr., dated Nov. 17, 1998, p. 30). Schwartz did not develop the property. From the date of the first purchase and sale agreement in 1989 to 1993, Schlicher became increasingly concerned because of a lack of development and the default on the note. (Tr., dated Nov. 17, 1998, p. 37).
Because of Schwartz's failure to pay pursuant to the 1989 note and Schlicher's desire to receive the balance of the purchase price, the parties renegotiated. (Pl.'s Ex. 8). In a new agreement, dated May 21, 1993, Schlicher released and discharged the original $300,000 debt and mortgage. (Id.). Schlicher retained a first mortgage on the property, but Schwartz was obligated to pay Schlicher $15,000 after he sold homes or lots on the property, as well as a share of the profits on the homes sold. Upon payment of $300,000, the agreement would terminate. (Id.).[2]
At the time the parties entered into the May 21, 1993 agreement, Schwartz represented that it was his intention to develop the property quickly. (Pl.'s Ex. 8, Tr., dated Nov. 17, 1998, p. 41). He also stated that he needed the May 21, 1993 agreement from Schlicher in order to obtain Connecticut Housing Finance Authority (CHFA) financing to enable him to develop the property. (Pl.'s Ex. 8).
Approximately three and one-half acres of the property had been subdivided prior to 1989 into three lots for residential single family homes. However, construction on these parcels was subject to approval by the Thomaston Inland Wetlands Commission. The lots are identified as lots 2A, 2B and 4B. The Town of Thomaston issued three building permits to Schwartz: the permit for lot 2A was issued on November 27, 1995, the permit for lot 2B was issued on August 23, 1996 and the permit for lot 4B was issued sometime prior to 1996. (Tr., dated Nov. 18, 1998, p. 89). The remaining 61.5 acres has never been subdivided and is unimproved land. CT Page 6088
On January 26, 1996, a subordination agreement was executed between the parties. (Pl.'s Ex. 11). Schlicher subordinated her 1993 mortgage to a CHFA mortgage in the amount of $100,000 as to lot 2B. (Id.). Schlicher executed a release of mortgage on February 2, 1996 for lots 2A and 4B. (Pl.'s Ex. 8). Schwartz paid Schlicher $30,000 ($15,000 per lot) in accordance with the terms of the 1993 agreement. (Pl.'s Ex. 10).
Schwartz constructed a single family home on lot 4B. On November 8, 1996, George and Tina Podhorski purchased the home for $131,000. (Pl.'s Ex. 20). At the time he sold the home, Schwartz had been doing business as "Kenwood Homes." (Tr., dated Nov. 18, 1998, p. 100). Schwartz built the home in about ten months, and the Podhorskis closed on the property about one and one-half years from the date of their initial deposit in 1995. (Tr., dated Nov. 18, 1998, pp. 100-01, 109).
Schwartz utilized a portion of the funds received from the sale of the home on lot 4B to satisfy the CHFA mortgage. (Tr., dated Nov. 19, 1998, pp. 8-10). CHFA then made funds available to construct a home on lot 2A. (Id.). After selling the home on lot 4B, Schwartz made no additional payments to Schlicher. He took the position that he earned no profits from the sale of the home. (Defendant's Exhibits 2 3, Tr., dated Nov. 19, 1998, p. 94). Schwartz asserts that it cost him approximately $146,000 to build the home, which was sold for $131,000. (Id.)
At the time of trial, there was a partially completed home on lot 2A and a foundation on lot 2B. Schwartz has made no payment to CHFA after selling the home on lot 4B. (Tr., dated Nov. 19, 1998, pp. 8-10). CHFA is no longer lending monies to Schwartz because he failed to complete the construction on lot 2A by February 1, 1997, a date he and the CHFA agreed upon. (Id.). As of June 1, 1998, the CHFA debt is $67,776.19. (Id.)
Schwartz failed to pay property taxes on the property. The town instituted a foreclosure action by writ, summons and complaint dated February 11, 1997. (Pl.'s Ex. 12). Both Schlicher and Schwartz were named as party defendants. (Id.). The town obtained a judgment of foreclosure by sale on June 17, 1997. (Pl.'s Ex. 13). On June 18, 1997, Schlicher redeemed the property from the judgment of foreclosure by paying the town of Thomaston the sum of $18,829.76. (Pl's. Ex. 14 15.) Property taxes, which are approximately $6,000 per year, are currently owing to the town. Schwartz has made only partial payments subsequent to CT Page 6089 Schlicher's previous redemption.
At the time of trial, Neil Scala, the building inspector for Thomaston, testified that he considered the project abandoned and revoked the building permit. (Tr., dated Nov. 18, 1998, pp. 88-91). In Scala's opinion, the pace of development is "ridiculous." (Id.). Scala expressed the opinions that the market for new homes in Thomaston was "very good," and the lots on the subject property are in a desirable area of town. (Tr., dated Nov. 18, 1998, p. 97). Scala has performed heating, electrical, framing and insulation inspections on the partially completed home on lot 2A. (Tr., dated Nov. 18, 1998, p. 90). The last inspection took place on December 31, 1996. (Id.).
Samuel Barto, the Thomaston town planner, zoning enforcement officer and inland wetlands officer, described his dealings with Schwartz regarding inland wetlands issues as "frustrating and exasperating" (Tr., dated Nov. 18, 1998, p. 50). The inland wetlands commission has issued numerous show cause orders on the property. (Id.). As of November 8, 1998, a show cause order was pending from the inland wetlands commission regarding the excavation of a ditch and flowing water behind lot 4B. (Tr., dated Nov. 18, 1998, pp. 50-51).
As of March 2, 1998, the property was appraised at a fair market value of $40,000 for lot 2B and $210,000 for the remainder of the property, for a total of $250,000. (Pl.'s Ex. 24)).[3]
Schwartz has developed various ideas for the future development of the property, but has not gained the necessary governmental approvals or commenced any construction. (Tr., dated Nov. 19, 1998, p. 35)
 EVIDENTIARY ISSUES
Schwartz raised three evidentiary issues in his post-trial brief dated March 22, 1999. First, Schwartz claims that Schlicher attempted to introduce evidence of settlement negotiations between counsel for Schlicher and Schwartz's real estate attorney. The proposed evidence consists of four letters, which are plaintiff's exhibits 16 through 19. The court sustains the objections on the basis that the letters are hearsay. Further, the content of the letters pertain to settlement negotiations which are inadmissible. See Tomasso Bros., Inc. v. OctoberTwenty-Four, Inc., 221 Conn. 194, 198-99, 602 A.2d 1011 (1992). CT Page 6090
Second, Schwartz argues that Schlicher waived the attorney-client privilege with respect to defendant's exhibit #5. In her post-trial brief dated March 22, 1999, Schlicher states that she "waives [her] argument on the exclusion of the letter from Attorney H.G. Guion to [Schlicher] . . ." Therefore, the objection is withdrawn and the letter is made a full exhibit.
Third, Schwartz asserts that Schlicher's use of leading questions on cross-examination was improper. Because the objections were ruled upon at trial, there are no issues to address in this memorandum of decision.
 DISCUSSION
Schlicher contends that Schwartz had a duty to develop the property under the May 21, 1993 agreement and has failed to do so. She argues that she is owed $270,000, plus the amount taxes she paid on the property. Schlicher seeks a judgment of foreclosure of lot 2B and approximately 61.5 acres of undeveloped property secured by the mortgage deed. Schlicher also asserts a claim for attorney's fees and court costs pursuant to General Statutes § 52-249. See Doe v. State, 216 Conn. 85, 107-08,579 A.2d 37 (1990); A. Secondino Son, Inc. v. Loricco,19 Conn. App. 8, 15-16, 561 A.2d 142 (1989).
Schwartz maintains that under the agreement, he is not obligated by any time frame or limitations, and that he does not have to pay Schlicher unless he develops the property. Schwartz claims that he feels personally obligated to develop the property, but he contends that he is not legally obligated under the agreement.
 A. Breach of duty to develop the property within a reasonable period of time and failure to pay property taxes.
As previously stated, Schlicher maintains that she is entitled to a judgment of foreclosure based upon Schwartz's breach of the May 21, 1993 agreement. While the agreement does not specify a date upon which the property is to be developed, it is firmly established law that "[w]here no time for the performance of a contract is contained within its terms, the law presumes that it is to be performed within a reasonable time . . . . [w]hat is a reasonable length of time is ordinarily a question of fact for the trier." (Citations omitted; internal CT Page 6091 quotation marks omitted.) Colby v. Burnham, 31 Conn. App. 707,715, 627 A.2d 457 (1993).
The court finds that Schwartz did not develop the property within a reasonable period of time. From the date of the first mortgage agreement in 1989 to the second mortgage agreement in 1993, Schwartz did nothing. From 1993 to the present, all that currently exists on the 64 acre property is a completed home which was sold, a partially completed home and a foundation. The remaining portion of the property remains unimproved. The Thomaston building inspector has revoked the building permits on the property. Schwartz has also lost his CHFA construction financing.
Schwartz's lack of performance is clearly contrary to the express intention of the parties as set forth in the May 21, 1993 agreement and their representations to one another. The agreement states, "[t]he said Schlicher desires to reach an agreement with the said Schwartz to develop said property." Schlicher's intention was to obtain funds from the sale of her property for her retirement income. Schwartz represented at the time of the May 21, 1993 agreement that he would develop the property quickly. The property is in a desirable area of town and the sales market for new homes is active.
Schwartz's position that he has no legal obligation to perform any development while at the same time owning the equity interest in valuable real estate is contrary to the terms of the May 21, 1993 agreement and the express intentions of the parties.
Therefore, the court finds that Schwartz breached the mortgage agreement by not developing the property within a reasonable period of time. The court orders strict foreclosure of the property.
Schlicher seeks to include within the debt the taxes she has paid on the property. "Primarily, the duty to discharge taxes upon the property rests upon the mortgagor or the owner of the equity and he owes to the mortgagee the duty to prevent any lessening of the value of the security which might endanger the payment of the mortgage debt by reason of their enforcement. NewHaven Savings Bank v. Valley View Joint Venture, Superior Court, judicial district of Waterbury, Docket No. 105418 (March 24, 1993, Glass, S.T.R.). General Statutes § 49-2 (a) provides," [T]axes . . . paid by the mortgagee . . . are part of the debt CT Page 6092 due the mortgagee or lienor."
Schwartz has been delinquent in the payment of property taxes. As a result of Schwartz's failure to pay the taxes, the Town of Thomaston foreclosed on the property and Schlicher paid the Town $18,829.76 to satisfy that judgment. Taxes are now in arrears. Schwartz, as the mortgagor of the property, was clearly responsible for tax payments. The court finds the amount of the principal debt is $270,000 plus $18,829.76, for a total of $288,829.76.
 B. Unjust enrichment
"Plaintiffs seeking recovery for unjust enrichment must prove: (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment. . . ." Barbara Weisman, Trustee v. Kaspar,233 Conn. 531, 550, 661 A.2d 530 (1995). "Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract." Hartford Whalers Hockey v.Uniroyal Goodrich Tire, 231 Conn. 276, 282, 649 A.2d 518 (1994).
Since the court orders a strict foreclosure on the subject property, Schlicher will have an adequate remedy. Therefore, Schlicher is not entitled to damages based on unjust enrichment.
 C. Breach of implied covenant of good faith and fair dealing
"Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement . . . [b]ad faith means more than mere negligence; it involves a dishonest purpose." (Citation omitted.) Gupta v. NewBritain General Hospital, 239 Conn. 574, 598, 687 A.2d 111
(1996).
Schlicher has not demonstrated that Schwartz had a dishonest purpose for not developing the property as required by their mortgage agreement. Although Schlicher has proven that Schwartz breached the May 21, 1993 agreement by not developing the property in a reasonable time, Schlicher has not proven that Schwartz breached the implied contract of good faith and fair dealing. CT Page 6093
 D. Breach of contract based on non-payment of profits
The May 21, 1993 mortgage agreement provided that Schwartz would pay Schlicher a portion of the profits made after selling a home or a lot. Schlicher claims that she is entitled to a portion of the profits from the sale of the home on lot 4B.
Schwartz maintains that he did not make a profit on the sale of the home. The court finds that Schlicher has failed to prove that Schwartz earned a profit on the sale of the home.
 F. Unconscionability of contract
"The classic definition of an unconscionable contract is one "which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other." Smith v. Mitsubishi Motors Credit of America, Inc.,247 Conn. 342, 349-50, ___ A.2d ___ (1998).
Since the court finds that the mortgage agreement between the parties is valid, the court will not address the unconscionability argument raised by Schlicher.
 CONCLUSION
Schwartz has not fulfilled his obligations under the mortgage agreement to develop the property. He has not proceeded with the development of the property in an orderly fashion and within a reasonable period of time. The court orders a judgment of strict foreclosure of the property, which includes lot 2B and the remaining 61.5 acres of undeveloped property. The court finds the total debt in the amount of $288,829.76, plus costs, including reasonable attorney's fees, pursuant to General Statutes §52-249. The total value of the property is found to be $250,000.
Schlicher shall promptly file a bill of costs. Law day is set at June 29, 1999 for the owner of the equity of redemption and subsequent dates in inverse order of priority.
So Ordered.
PETER EMMETT WIESE, JUDGE